In the Matter of VAN CORTLAND ASSOCIATES, Appellant, *v.* HORTENSE W. GABEL, as New York City Rent and Rehabilitation Administrator, Respondent, and DOROTHY FEUER et al., as Tenants of 3951–57 Gouverneur Avenue, Borough of The Bronx, Intervenors-Respondents.

First Department, October 26, 1965.

*Albert W. Fribourg* of counsel (*Louis M. Fribourg* with him on the brief; *Fribourg & Fribourg,* attorneys), for appellant.

*William E. Rosen* of counsel (*Beatrice Shainswit,* attorney), for respondent.

*Barney Rosenstein* for intervenors-respondents.

*Per Curiam.* When this matter was previously before this court, we remanded it with instructions as to the nature of the

findings essential to a proper determination that the sales price was induced by abnormal financing (21 A D 2d 192). On the earlier appeal respondent had relied on several factors — among them that the purchase price and the cash payment should be taken not from the actual sale but from a prior sale, because the petitioners bought the contract from the prior purchasers and the cash received by the original vendors was less than 20% of the ultimate purchase price. The respondent's report iterates this contention but it is not urged in the brief, we believe advisedly.

Respondent claims that a review of 27 like buildings in The Bronx supports her contention that the excess of mortgages over assessment, a ratio of over 8 between rent roll and purchase price and a two-year deferment in amortization payments indicate abnormal financing. Of the 27 transactions passed upon, in one there was no finding as to financing. Of the remaining 26 the financing was found to be normal in 24 instances. In 15 there were deferred amortization payments. Respondent here takes the position that any deferment is unusual. Obviously her conclusion does not follow her investigation. In the majority of comparable sales there was deferment and in at least a large percentage of the instances in which she found the financing normal deferment appeared. Her conclusion in this regard is unsupported and does not merit the challenge of proved real estate practice. In even greater degree the same is true of mortgages exceeding assessed value. In over two thirds of the transactions on which respondent relies, the same condition prevailed. Adhering to the preconceived standard is arbitrary.

Only in the instance of ratio of rents to purchase price has the respondent any ground on which to maintain her position. Here the ratio in the instant proceeding was 8.18. In the examples relied on, the ratio in 16 varied from 6.5% to 7, and in 10 from 7 to 7.75. It should be remembered that all the factors for consideration are not ends in themselves, that is, the object of inquiry is not whether they exist. The main question is whether the financing is so out of the ordinary that the sale price becomes suspect. Probably the least significant of the enumerated factors to be taken as guides is this ratio of rents to earnings. Whenever rents are controlled and, hence, fixed, any increase in real estate values is going to produce an increase in the ratio. This is so even though the financing is of the most conservative description (21 A D 2d 192–195). The ratio becomes significant where it appears that the building could not be made to show a return without a very large increase over

increases already obtained. Here the record shows that to obtain a 6% return on the purchase price an increase of about $9,300 would be required. This represents an increase in the current rents of approximately 11.9%. Increases from the freeze date amount to 28.47%, or less than .008 per annum. While the record does not contain the requisite underlying figures, it can easily be seen that this increase does not compare with the general increase of real estate values in the same period. Nor would the increase resulting from use of the purchase price amount to such a very large amount that it indicates that the purchase price was materially influenced by the prospect of a rental increase.

It therefore appears that only one of the ratios adopted by the respondent to show abnormality has any real support from the evidence she herself used to form her judgment. And that ratio in the present instance was so slightly exceeded that a finding of abnormality resting solely upon it must needs be arbitrary.

The judgment dismissing the petition should be reversed, on the law, with costs and the petition granted to the extent of remitting the matter to the Administrator to fix the rents based on a return of 6% of the purchase price.

BREITEL, J. P., VALENTE, McNALLY, STEVENS and STEUER, JJ., concur.

Judgment unanimously reversed on the law, with $50 costs to the appellant, and the petition granted to the extent of remitting the matter of the Administrator to fix the rents based on a return of 6% of the purchase price.